# Commonwealth *v.* Allegheny County, Appellant.

*Public officers—Fees—Statutes—Repeal—Acts of March* 10, 1810, *and April* 6, 1871.

The act of March 10, 1810, 5 Smith's Laws, page 106, requiring county officers to pay over to the commonwealth fifty per cent of all fees in excess of $1,500 was repealed as to Allegheny county by the act of April 6, 1871, P. L. 476, and its supplement, the act of March 6, 1872, P. L. 209, providing that such fees should be paid into the county treasury.

Argued April 29, 1895.    Appeal, No. 21, May. T., 1895, by defendant, from judgment of C. P. Dauphin Co., Jan. T., 1895, No. 507, on appeal from tax settlement.    Before WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ.    Reversed.

Appeal of the county of Allegheny from an account settled and entered against said county by the auditor general and approved by the state treasurer, on Nov. 14, 1894, for fees of county officers for the year 1893, from Jan. 2, 1893, to Jan. 1, 1894.

The case was tried before SIMONTON, P. J., from whose opinion it appeared that in the fall of 1894 the auditor general and state treasurer settled an account against the prothonotary of the court of common pleas of Allegheny county, against the register of the county, against the recorder of the county, and against the clerk of quarter sessions of the county, in which these different officers were charged, for the year 1893, with the one half of the fees earned and received, less the present salary of the different officers, and the clerk hire of the offices.

The court entered judgment in favor of the commonwealth and against the county of Allegheny as follows:

| | |
|---|---:|
| Prothonotary's fees for 1893, half excess . | $8,046 84 |
| Register's fees for 1893, half excess . . | 2,101 40 |
| Recorder's fees for 1893, half excess . . | 1,460 54 |
| Clerk of quarter sessions' fees, half excess . | 1,589 37 |
| Total . . . . . | $13,198 15 |

*Error assigned* was entering judgment for commonwealth.

*D. T. Watson, Walter Lyon, W. J. Brennan* and *N. S. Williams* with him, for appellant.—Where the words of a statute are plain there is no need of construction: Potter's Dwarris on Statutes, 182.

The contemporaneous construction of a statute by those whose duty it is to execute it, especially when this construction has been successfully adopted by all different administrations and officers for twenty-two years, is entitled to great respect: Edwards v. Darby, 12 Wheat. 210; Potter's Dwarris on Statutes, 179; U. S. v. Recorder, 1 Blatchf., C. R. R. 218; Graham's App., 1 Dall. 136; Com. v. Grant, 2 Woodward's Cases, 379.

In Cohen v. Commonwealth, 6 Pa. 111, the Supreme Court, speaking of the act of 1810, said " . . . . the law of 1810 cannot be considered as assessing or laying a tax properly so called."

The act of 1810, so far as Allegheny county is concerned, was repealed by the act of April 6, 1871, P. L. 476, entitled " An act relating to the fees and salaries and duties of certain county officers in Allegheny county: " Banks v. Com., 10 Pa. 447; Norris v. Crocker, 13 How. 429; Potter's Dwarris on Statutes, 154 and note 4; In re Bounty Accounts, 70 Pa. 96; Com v. Grier, 152 Pa. 180; McCleary v. Allegheny County, 35 W. N. C. 193.

The cases in Allegheny county where these statutes of 1871 and 1872 and 1876 have been reviewed are three in number: Bell v. Allegheny, 149 Pa. 381; Com. v. Grier, 152 Pa. 178; McCleary v. Allegheny County, 35 W. N. C. 193.

*Henry C. McCormick,* attorney general, *Benjamin M. Nead* and *John P. Elkin,* deputy attorney general, with him, for appellee.—The act of 1810 was not repealed: Erie v. Bootz, 72 Pa. 199; Barber's Contested Election, 86 Pa. 392; Plum v. Lugar, 49 N. J. Law Rep. 557; McNeely v. Woodruff, 1 Green (N. J.), 352; 23 Am. & Eng. Ency. of Law, 491; Chicago etc. R. R. v. United States, 127 U. S. 406; Homer v. Com., 106 Pa. 221; Com. v. Hutchinson, 10 Pa. 468; Com. v. Philadelphia, 157 Pa. 558; Com. v. Lehigh Coal & Navigation Co., 162 Pa. 603; Sutherland on Statutory Construction, sec. 307; Endlich on Interpretation of Statutes, sec. 361; R. R. Co's. App., 77 Pa.

429; In re Borough of Pottstown, 117 Pa. 538; Borough of Millvale v. R. R., 131 Pa. 1; R. R. v. Riblet, 66 Pa. 164; Dorsey's App., 72 Pa. 192; Ridge Ave. Pass. Ry. v. Phila., 124 Pa. 219.

OPINION BY MR. JUSTICE DEAN, May 20, 1895:

In 1894, the auditor general and state treasurer settled accounts against the prothonotary, register, recorder, and clerk of quarter sessions of Allegheny county, in which they charged these officers with one half the fees received by them in excess of their salaries and clerk hire for the year 1893. As they had paid all the fees pertaining to their office which had been received by them for this year to the county by agreement, the county assumed the responsibility, and was made party defendant in the suit. The case was tried before the common pleas of Dauphin county, under act of 22d of April, 1874, without a jury. Judgment having been given for the commonwealth, in the sum of $13,198.15, the amount claimed, the county presses this appeal.

Before the act of March 10, 1810, all the office fees of a county officer belonged to him exclusively. But that act, which is entitled, " An act taxing certain offices," required him to pay over to the state fifty per cent of all fees in excess of fifteen hundred dollars. Then, by the act of April 5, 1842, in addition to the fifteen hundred dollars, he was allowed to deduct his expenses for clerk hire and stationery.

When passed, the act of 1810 was a general act, applicable to all the counties of the state, and so continued to be until the passage of the act of April 2, 1868. It was then repealed, as to all counties, except Allegheny, Lancaster, Montgomery, Philadelphia, Beaver and Washington. Then, the act of April 6, 1871, a local or special law for Allegheny county was passed, which directed that all fees limited and appointed by law to be received by the county officers against whom this account was settled, as well as others designated in the act, should belong to the county of Allegheny, and that said officers should not "receive for their own use, or for any use or purpose whatever, except for the use of the county of Allegheny, any fees for any official services whatever." This was, in substance, the provision of the first section of the act; the officer

no longer had title to a single dollar chargeable to litigants under the fee bill, except, by a proviso to the third section, the sheriff and coroner were allowed fees for mileage. By section four, it was expressly provided that the commonwealth's taxes on writs, and its proportion of the fees received, should be paid by warrant on the county treasurer. Section seven of the act directed that the officer, and all his deputies and clerks, should be paid fixed and specific salaries, which were either determined by the act itself, as in case of the principal officers, or, as in case of deputies and clerks, by a board designated to perform that duty. The same section directed that the commonwealth's share of the fees should be deducted from the aggregate sum received, before the salary of the principal officer was paid, and if not enough remained to cover the salary, then he should receive only such proportion as equaled the aggregate of fees earned during his term, after paying the deputies and clerks in full, and the commonwealth.

It will be noticed what a radical change was made in the relations between the commonwealth and the officer, as they had existed under the act of 1810. Before the act of 1871 the officer accounted to the commonwealth for, and paid to her, fifty per cent of the fees in excess of fifteen hundred dollars : he was her debtor, and she looked to him alone for her money ; under the last named act, she peremptorily ordered him to pay all fees into the county treasury, and at the same time announced she would look to the county for payment ; in effect, the officer was no longer answerable to her, and the county was.

This act was followed by a supplement to it of March 6, 1872, which expressly repealed the fourth section of the act of 1871. The repealed section, as already noticed, directed that the state's share of the fees, instead of being paid as under the act of 1810 by the officer, should be paid by the county by warrant drawn on the county treasurer. The first section of the act of 1871 had declared all the fees should belong to the county, and be paid into the county treasury ; the fourth qualified it by declaring that the commonwealth's proportion should be drawn out by warrant ; this repeal left unqualified the positive declaration, that all the fees belonged to the county ; they were in the county treasury, and by the explicit declaration of the law, in the first section, belonged to the county ; then this sweeping

disclaimer of right to any part was restricted by the claim in the fourth section to a proportion of these fees, to be paid by warrant on the county treasury; but now, by the repeal, this claim to a proportion is absolutely abandoned, leaving the unqualified renunciation of any claim to any proportion of such fees, as announced in the first section, standing in full force.

But the act of 1872, as a repealing act, went further: the second proviso to the seventh section of the act of 1871 directed, " That after ascertaining the amount due the deputies and clerks in each office, and the state's share of the fees, if there has not been a sum sufficient from the fees received and paid in, or earned and due by the county for services rendered, to pay the full amount of the salary of the officer holding said office, he shall only receive such proportion of his salary as shall be equal to the aggregate of the fees received and earned during his term of office, after paying the deputies and clerks in full, and after also paying the share of the fees due the commonwealth; and all the moneys accruing from fees above the said salaries and the share of the state, shall accrue to the benefit of the county," excepting, however, officers then in office elected before the year 1870, who should, for the unexpired term of their office, be paid all fees earned after paying the salaries of clerks and deputies, and the commonwealth's share of fees, as provided by act of 1871.

This second proviso, the act of 1872, also expressly repealed, and in lieu thereof it was directed that all salaries, except those of county commissioners, officers elected in 1870, and a part of the salaries of judges of courts, should be paid from the county treasury, out of the fees paid into the treasury, after ascertaining and deducting the amounts due deputies and clerks; and if there were not enough left to pay the salary of the officer, he should only receive such proportion of his salary as equaled the aggregate of the net fees. The proviso directed the officer should receive his salary, after deducting the salaries of deputies and clerks, and the commonwealth's proportion of the fees; it is repealed; he is now to receive his salary, after deducting those of his deputies and clerks only; there is no longer anything to be taken off for the commonwealth.

The court below determined that the act of 1810 was not repealed by the acts of 1871 and 1872, so far as relates to the

right of the commonwealth to one half of the office fees.    We are of a different opinion.

The act of 1871 was, manifestly, a substitute for the act of 1810, so far as related to Allegheny county.    Could they stand together, or could any material part of the act of 1810 stand, if the act of 1871 were enforced according to its plainly expressed terms?

The act of 1810 made the officer accountable to and debtor of the state; that of 1871 discharges him and accepts the county as debtor; the first, made an allowance to the officer of fifteen hundred dollars, and demanded one half the excess; the second, makes no allowance to the officer.    The act of 1810 simply provided that the officer should account for and pay to the commonwealth one half of all fees for services performed by him in excess of the fifteen hundred dollars.    When the act of 1871 declared that he should pay all fees into the county treasury, and the county should thereafter pay one half to the commonwealth, without any deduction of a minimum salary for the officer, what was left of the act of 1810 to enforce?    If the commonwealth demands from the officer an annual account, as provided in the old act, he replies, I have, as you directed by the second section of the new act, accounted monthly to the county ; if she demands payment of any proportion of the fees received, he replies, I have none of them, having paid all, as you directed by the second section of the same act, to the county monthly.

If the mandate of the new statute be obeyed, there is nothing for those of the old to operate on.    Nor, is there ambiguity or doubt as to the import of the commands of the new statute ; we do not need to wrestle over doubtful construction of dubious words and phrases; they admit of but one construction; are almost as peremptory and plain as the command of the centurion, and were obeyed as implicitly: "I say . . . . to my servant, do this, and he doeth it."

If, then, the act of 1871 was plainly a substitute for the act of 1810, the act of 1872, by its repeal of the fourth section and second proviso to the seventh section, just as plainly relinquished all claim of the commonwealth to any part of the officer's fees. Without this fourth section, and this proviso, under the act of 1871, the commonwealth would have been entitled to nothing

by their express repeal, that act is without them and stands a palpable renunciation of any claim, under the act of 1810, to half the fees.   Where the words of a statute are not doubtful, there is no need for construction; it is the duty of courts to follow explicit enactments of the legislature, the taxing power; if it has clearly not taxed, we cannot, by a strained construction, tax.

From 1872 down to 1894, both the county and commonwealth officers assumed the act of 1810 was repealed by that of 1871, and that, by the act of 1872, the commonwealth relinquished claim to any part of the office fees, which theretofore it had demanded.   In so doing, they did not adopt one of two doubtful constructions of the law; they only followed its manifest directions.   It needs no aid now, from contemporaneous construction; standing on its unambiguous words, it could have received no other construction.   The learned judge of the court below admits that he arrives at his conclusion in favor of the commonwealth with a great deal of hesitation,—we arrive at ours with none.

The appeal is sustained, and the judgment is reversed.